CRUCIBLE STEEL CO. v. UNITED STATES.

(Circuit Court, S. D. New York. June 1, 1904.)

No. 3,413.

1. CUSTOMS DUTIES—CLASSIFICATION—SHEET STEEL IN STRIPS.

It appeared that in the manufacture of certain cold rolled sheet steel in strips a necessary preliminary to the process of cold rolling was the process of pickling (cleaning by acid), which removes the scale, and makes the surface of the steel white, the result of the subsequent cold rolling being to give the metal a bright surface; also that the brightening did not result from the pickling, nor from any process subsequent to cold rolling, nor from any operation distinct from that necessary to produce the steel, but was due to the cold rolling. *Held*, that steel of this kind is not within the provision in paragraph 141, Tariff Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 162 [U. S. Comp. St. 1901, p. 1640], for "steel, * * * cold rolled, * * * brightened, * * * or polished by any process to such perfected surface finish or polish better than the grade of cold rolled smoothed only."

On Application for Review of a Decision of the Board of General Appraisers.

These proceedings were brought by the Crucible Steel Company of America for review of a decision affirming the assessment of duty by the collector of customs at the port of New York.

William J. Gibson, for importers.
Charles Duane Baker, Asst. U. S. Atty.

TOWNSEND, Circuit Judge. The merchandise in question consists of what is known as "sheet steel in strips," and was assessed for duty under the provisions of paragraph 135 of Tariff Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1638], which provides for "sheets and plates and steel in all forms and shapes not specially provided for." It is admitted that this classification was correct. An additional duty was also assessed upon said merchandise under the provisions of paragraph 141 of said act, c. 11, § 1, Schedule C, 30 Stat. 162 [U. S. Comp. St. 1901, p. 1640], which provides for "steel * * * cold rolled, * * * brightened, * * * or polished by any process to such perfected surface finish or polish better than the grade of cold rolled, smoothed only, hereinbefore provided for." The previous provisions with reference to steel cold rolled and smoothed only, referred to in paragraph 141, are contained in paragraph 133, the pertinent portion of which is as follows:

"Provided, that plates or sheets of iron or steel, by whatever name designated, other than the polished, planished, or glanced herein provided for, which have been pickled or cleaned by acid, or by any other material or process, or which are cold rolled, smoothed only, not polished, shall pay two-tenths of one cent per pound more duty than the corresponding gauges of common or black sheet iron or steel."

It is unnecessary to discuss the elaborate contentions of counsel for the importers as to the various ways in which the uncertain provisions of these paragraphs may be so reconciled and construed as to support his contention. Two questions are presented, namely, whether the merchandise has been brightened to a surface better than cold rolled smoothed only, and whether it has been subjected to any process for this purpose, as distinct from the process necessary to produce the articles in question, namely, cold rolled strip steel. It appears that said process consists in rolling the rods down hot to a certain gauge, then annealing them, cleaning them with acid, and subsequently cold rolling them. The cleaning with acid, termed "pickling," serves to remove the scale and make the surface of the steel white, and the result of the subsequent cold rolling is to give it a bright surface. The great preponderance of evidence is to the effect that this particular kind of cold rolled strip steel cannot be produced without the intervening step of pickling, and that it would not be commercially known as cold rolled, smoothed only, except where thus produced. In these circumstances it cannot fairly be said that this merchandise has been "brightened by any process to such perfected surface finish or polish better than the grade of cold rolled, smoothed only," because the operation of cleaning or pickling is essential to the creation of the commercial product which is the subject of duty. It is not the pickling which brightens the steel. The brightening results from cold rolling on a plain steel surface.

The illustrative Exhibits A, B, and C, introduced by the government, seem to be only remotely relevant to this inquiry, because they belong to a different class of merchandise. The testimony of two of the witnesses for the government that the merchandise in question has been subjected to a process to give it a brighter finish, is of very little weight. It appears from their statements that they have only a very superficial acquaintance with this kind of product. If this class of steel in strips, when first cold rolled after the said necessary preliminary processes, is to be held to be so brightened as to be better than that provided for in paragraph 133, then it would appear that there could be no such thing as sheet steel in strips cold rolled, smoothed only. If such steel strips are not to be held to be thus brightened by the said first cold rolling, then it is impossible to say at what period during the numerous passes through the rolls they cease to be smoothed only and become brightened. In no case have they been brightened or polished by any process subsequent to their being cold rolled.

The conclusion reached is that this merchandise has not been brightened within the meaning of paragraph 141. This conclusion is supported by the decisions in Boker v. U. S., 124 Fed. 59, 59 C. C. A. 425, and U. S. v. Wetherell, 65 Fed. 987, 13 C. C. A. 264; by the uniform practice of the Treasury Department for 15 years not

to assess the additional duty of one cent per pound, herein protested against, on this class of cold rolled strip steel; and by the further fact that the finished product is to be used for car seat springs, and its value is not increased by the brightening which results from the processes necessary to its production.

The decision of the Board of General Appraisers is reversed.